Good morning, Your Honors. May it please the Court, my name is Janet Hendrick, and I represent the Appellant Cross Chemical Company 2013, or JCCAM 2013 for short, which is the successor to JCCAM Chemical Company and its affiliates, which I'll refer to today as old JCCAM. JCCAM 2013 appeals the District Court's entry of summary judgment on three of its claims, breach of contract, trade secret misappropriation, and tortious interference with contract. The District Court's order reflects several critical fallacies that resulted in erroneous rulings and entry of summary judgment on these claims. The first fallacy is that JCCAM 2013 seeks to overcome Arthur Shepard's at-will employment status. It does not. Mr. Shepard's at-will employment status, meaning he could be terminated at any time, or he could leave at any time, as opposed to employment for a guaranteed period, is not disputed, but it's also not relevant to the analysis of whether the two documents that JCCAM 2013 bases its breach of contract claim on are enforceable. Those two documents are a written employee agreement between Mr. Shepard and, at the time, old JCCAM that he signed in 2008. And the second document that we base our breach of contract claim on is a code of conduct that Mr. Shepard signed on multiple occasions with JCCAM 2013, or during his employment with JCCAM 2013. Roberts. Counsel, let me get the chronology here. I believe that Mr. Shepard was employed by old JCCAM, I'll use that term, from 2001 to 2013? Mr. Shepard was employed by old JCCAM from 2008. 2008. Okay. And that's when the employment agreement was signed. 2008 was when the employee agreement was signed until old JCCAM sold its assets to CES and JCCAM 2013 on March 1, 2013. And what was argued before the district court as the consideration for the 2008 employment agreement? Well, there were multiple components of consideration. I would propose to this Court that continued employment based on North Dakota precedent is sufficient consideration for an at-will employment relationship and for that contract. The stated consideration in the employee agreement is an opportunity to participate in an equity plan. And which would control? The stated reason that the employee was, I guess, given as the inducement for the employment agreement or some other argument for consideration? There is no precedent that states that the only consideration must be stated in a written document. And that would be a logical conclusion from the fact that there are oral contracts and the fact that it was memorialized in the document, I understand the Court's point. But the Court should be looking for any consideration, which under North Dakota law is any benefit to the promisor, a promise of a benefit. And our position is that there clearly is consideration. The district court found that there was a failure of consideration, specifically that there was no evidence that Mr. Shepard either received equity in J-CAM or received any compensation at the time old J-CAM sold to CES, which also is inaccurate. He did receive a retention bonus of $90,000 from J-CAM 2013 in connection with his continued employment. But this is a failure of consideration conclusion by the district court. And importantly, that is an affirmative defense that under North Dakota law must be pleaded by a party in the response of pleading. Mr. Shepard did not plead failure of consideration, which, of course, is distinct from lack of consideration. So returning briefly to the at-will status, J-CAM's position is that precedent makes clear that the fact that an employee is an at-will employee should not determine whether a document is a contract. In fact, the at-will employment relationship is contractual in nature, which the precedent we cite makes clear. As this Court said in the Skinner v. Moritz case, faithfulness to the at-will employment doctrine, quote, cannot be taken to mean that at-will employees are bereft of any and all contractual rights. That was Minnesota law. Proceed. Yes. Thank you. It was North Dakota law. Proceed. But that's exactly what the district court's order states here. The district court mentions Mr. Shepard's at-will employment status multiple times throughout the holdings, stating, all these agreements or contracts clearly reveal that Shepard was at all times simply an at-will employee. None of the documents at issue can be considered contracts of employment. Again, JCCAM is not trying to overcome the at-will employment presumption. The second fallacy that the district court made is that JCCAM 2013 seeks to enforce Mr. Shepard's non-compete provision in the 2008 employee agreement. It is not seeking to enforce the non-compete provision. But reading the district court's order, the implication is that that's exactly what JCCAM is trying to do. The district court found that Mr. Shepard's employee agreement is void in its entirety under North Dakota law as in a legal restraint on trade. This is contrary to both the facts and the law. Starting with the statute, North Dakota Century Code 90806 states, a contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void. I'm emphasizing those three words because they are three important words in the statute that the district court completely disregarded. Black letter law says every word in a statute is there for a reason. It should be given its due significance. But doesn't North Dakota enforce this very strictly, very firmly, the statute you just read? I completely agree with you, Your Honor, as to a non-compete or a customer solicitation or non-solicitation covenant post-employment. Those are not the covenants at issue here. JCCAM is seeking to enforce two covenants in Mr. Shepard's employee agreement. An employee non-solicitation covenant that says he can't solicit JCCAM 2013's employees after employment for a certain period of time. There is no precedent that would render that covenant unenforceable, including 90806. And Mr. Shepard ultimately concedes that in his brief. He does not try to oppose that an employee non-solicitation covenant is an illegal restraint on trade. An illegal restraint on trade is you can't go work for someone else. There's nothing about an employee non-solicitation covenant, and again, no precedent that has ever held that covenant to be unenforceable under 90806. The second covenant that JCCAM is seeking to enforce is the nondisclosure of confidential information covenant. Again, no precedent that validates such a covenant under the North Dakota Century Code. What about the fact the other side repeatedly stressed that none of this stuff was confidential? Well, Your Honor, we would disagree with that. And that gets probably more to our trade secret claim. Did the district court make fact findings on that that defeat your claim, your argument here? The district court found, as to the trade secret claim, that JCCAM as a matter of law did not take reasonable efforts to protect the information at issue, Your Honor, a finding that we take issue with. So, counsel, let me ask you about that. So the finding of law would be reviewed de novo, but there's an underlying factual finding that they didn't take sufficient steps to protect the information. What standard of review do we apply to that? Clear error to the factual findings, Your Honor. And our position is we were required to put forth some evidence that JCCAM took reasonable efforts to protect the information at issue. And the record reflects that JCCAM met that burden. The district court emphasizes that the documents at issue, proposals, pricing, bid information, did not bear a confidentiality stamp or legend. That is true. But that is not a dispositive factor. An equally important factor from the cases that we cite is use of confidentiality agreements with employees, limited disclosure of information. The record reflects that JCCAM took those measures. And so our position is the district court erred in finding that as a matter of law, JCCAM had not taken reasonable efforts to protect the information. Might it be different, though, for different customers? Because I know with Slauson there was the additional requirement that they not share it, but you didn't have that for Scout and Sinclair. That's true. There were different forms of master services agreement, Your Honor. You are correct about that. I want to make one point about that, if I can find it. So in, and I apologize right now, I can't remember which Eighth Circuit case this is cited in. I can find it. But there is a U.S. Supreme Court case, Kiwani Oil, that has been cited with approval by this court, that states the secrecy of the information is not lost if the holder reveals the information to a third party in confidence with an implied obligation not to disclose it. These were customers that JCCAM was sending this information to. And there is record evidence in the form of testimony from multiple JCCAM witnesses that it is not the industry standard to share pricing or proposal information, that although it does happen from time to time, that is not common, it is rare, was the testimony. So customers don't say, hey, JCCAM is giving me, you know, whatever, $10, and I'd like to get a price of $9.75. The industry standard is that that does not happen. Not that it never happens, but that that is not the industry standard. So again, this goes back to, was JCCAM taking reasonable efforts? Again, I'm emphasizing that word. Because as this court has said, that does not require absolute secrecy or building an impenetrable fortress or extravagant efforts. It's reasonable efforts under the circumstances. And I think the industry standard here is important to that. JCCAM had reason to believe this information would remain secret. So it is simply an error to say there is no evidence in the record to support that JCCAM took reasonable efforts to protect the information at issue. Thank you. So just to complete my argument, because I'm very much running out of time, that the district court should have severed unenforceable provisions consistent with the case law that we cite rather than voiding the entire employee agreement. Also, just briefly, the district court's finding that JCCAM 2013 cannot enforce the employee agreement. Our position is that clearly JCCAM 2013 is a successor to HCS and old JCCAM under the definition in the employee agreement. The district court actually acknowledges that JCCAM is a successor to old JCCAM in its order on page 2, and that therefore that JCCAM may enforce the employee agreement. We've addressed consideration. We have provided authority to the court that stands for the proposition that continued employment for a substantial period of time serves as consideration for an employee agreement. Touching very briefly on the code of conduct, I'll focus only on the key argument. A lot of the arguments are overlapping as to the code of conduct. But there's an argument that JCCAM was not a party to the code of conduct or a beneficiary under the code of conduct. Just want to remind this court, Mr. Shepard was only an employee of JCCAM 2013, was never employed by CES, the parent company. So the information that was being provided to Mr. Shepard pursuant to this code of conduct was from JCCAM 2013. We've talked about the trade secret misappropriation case. Again, our position is that there is reasonable effort, evidence of reasonable efforts in the record. And then finally, on the tortious interference with contract claims, just to clarify, we did include briefing on the claim of tortious interference with business relations. That should not have been included. That is not a claim that's at issue in this case. But as to tortious interference with contract. Counsel, you're aware that you're well into your rebuttal. Okay. But go ahead. I'm going to finish very briefly. No, it's your time. It's your time, Counsel. That there is, like the trade secret claim, there is evidence in the record that Mr. Shepard and GEO were acting with an improper purpose in interfering with the contracts at issue. Again, the district court found that as a matter of law, there was no such evidence. Our position is the district court should not disturb the district court's entry of summary judgment on GEO's claim for tortious interference because there is insufficient evidence. And with that, I'll reserve some time. Thank you. Yes. And we'll round it to one minute for your planning purposes. Okay. Okay. Mr. Arnes. May it please the Court, Counsel, my name is Patrick Arnes. I'm here on behalf of the appellee, Arthur Shepard. After three years of aggressive litigation, Judge Hovland was correct to find that JCCAM 2013's six claims lacked a basis in fact or law. JCCAM 2013 challenges three of those claims on appeal. This Court should affirm on all three. First, the district court was right to grant summary judgment on the breach of contract claim. JCCAM 2013 is trying to resurrect a contract that was terminated before JCCAM 2013 ever obtained any assets in this business. And because that contract was terminated, they are now in this case trying to cobble together several other documents that are not contracts to try to impose those exact same obligations on Mr. Shepard. Judge Hovland was correct to grant summary judgment on that claim. Second. Does successor clause apply to that claim? The successor clause of the original employee agreement? Yes. Yes. JCCAM 2013 cannot be a successor to the 2008 agreement with HCS because HCS and JCCAM Chemical, totally different entities, had terminated that contract before the APA, meaning the purchase agreement, went into effect. So Mr. Shepard was terminated, and it's undisputed. He was terminated on February 28, 2013. And JCCAM 2013, other than the name sounding similar, is a completely distinct legal entity, didn't obtain any rights to anything until after that termination happened. And so it cannot qualify as a successor because you can only, of course, assign what you own. And you can only assign what exists. And that HCS agreement did not exist on March 1, 2013. So no, JCCAM 2013 is not a successor. And not an assignee. And not an assignee for those same reasons. And Judge Hovland was, of course, correct on those points. I want to also address the issue of consideration. And Judge Gross, you addressed this in your questions to my colleague on the other side. The precedent to look at is the four corners of the agreement. In North Dakota, as in most states, when there is unambiguous contract language as to what the terms are, those terms cannot be disturbed. Here, in particular, we have a merger clause as well, which doesn't get dispositive weight, but it strengthens the conclusion that when 3.1 says this is what the parties are contracting to to be the consideration, which is the participation in the equity plan, that's what the consideration is. But there's more. When you look at paragraph 1.2 in the employee agreement, the parties are telling each other what this contract is not, what the consideration is not. Because when you look at 1.2, you see that the parties are making explicit and disclaiming that this contract is about initial employment or continuing employment. So whether in some other cases involving oral contracts or the like, continuing employment could theoretically, in the abstract, qualify as consideration, we know for a fact that the parties did not contract for that in this case because of 1.2 and 3.1. Does it matter, counsel, that the language of the agreement referred to an opportunity to participate in an equity plan rather than actual participation? It does not, because the evidence is no different. There is no evidence in the record, and that's exactly why summary judgment is appropriate, that Mr. Shepard was ever offered the opportunity to participate in the equity plan. And, in fact, I can give you — well, there's no evidence in the record on that, and that's exactly what Judge Hufflin found. What about the bonus? We heard about the bonus. There — well, I take issue with it calling it a retention bonus. And the record is unclear on this, Your Honor. First, when JCCAM 2013 raises that and cites to the appendix, it's citing to its opposition brief at the summary judgment stage. It's not directing this Court to a specific appendix or page or piece of evidence that is addressing the specific what they call retention bonus. At the district court, they just refer to the 173-page APA, the purchase agreement. And they haven't directed anyone to a specific page or a specific document that says this is the intention of the parties. Moreover, and perhaps more importantly, however, whatever happens in March of 2013 after the contract has been terminated can have no retroactive effect as to what the parties were contracting for in 2008. And if we go back to 3.1, where there is an unambiguous statement as to what the consideration is and what it is not, there's nothing about a retention bonus in there at all. So let's just go ahead. Let's go ahead. So assume for the sake of argument there is consideration for the employment agreement. And why isn't the district court wrong that under North Dakota law you shouldn't enforce the severable provisions of the employment agreement rather than saying that the entire agreement is void because of this unenforceable noncompete provision? Well, the unenforceability of the entire agreement is an independent basis to affirm. The fact is, JCAMM 2013 has pointed this Court to no authority that mandates severance. There is some authority in the Wagner case that some courts have, under their discretion, severed different provisions. Well, I think your opposing counsel quoted a case that said to the extent that. Sure. So what I would offer, Your Honor, is that gives the district court the authority to sever. And, in fact, when you look at the actual agreement as worded, even Article 9 of that 2008 contract talks about empowering the courts to have that ability. But it doesn't require it. It empowers it. It doesn't require it. And especially here where North Dakota has this strong public policy that it enforces strictly, it was within Judge Hovland's discretion to decide whether to blue pencil it or not. I mean, if we just take a step back, as a general matter, when you talk about a judge reforming and blue penciling a contract, that is a matter of equity and that is a matter of discretion. And especially here where we have the backdrop of 11 litigations, what Judge Hovland is describing as vindictive, unreasonable, beyond bullish, where they're trying to enforce these patently unenforceable provisions, he was within his authority to strike the entire agreement. And we submit that was proper. And he did not clearly err in that respect. However, I would still direct the Court that the Court need not reach that issue because there is no contract here. The JCAMM 2013 is not a party to the HDS agreement. There was a failure of consideration. It was pled. Consideration was pled, to be clear. It was briefed on the merits, to be clear. It was opposed on the merits, to be clear. And Judge Hovland addressed it on the merits. So to the extent there was a technical deficiency in lack versus failure, that's not been something that has been addressed, and it was only raised in the reply brief on appeal. As far as the code of conduct, that is clearly not a contract. There's a presumption in North Dakota law that if you — for employee codes of conduct, if you want it to be, you have to overcome a presumption and show the intent of the parties that they meant this to be a contract. The parties in this case said, this is not a contract. That's not how you overcome the presumption. There's nothing in that policy that would overcome that strong presumption, which is just mere guidelines, and it's not even with the party that's trying to enforce it. As far as the trade secret claim goes, there's a concession, and the record is undisputed. There are no confidentiality designations on any of the three documents that they call trade secrets. And Judge Hovland was, of course, correct to follow avid air. And if you look at this Court's decision in avid air, there are two hallmarks on this important element of trade secrets. One is confidentiality designations, and the second is confidentiality agreements. It's undisputed for two of the three customers that there are no confidentiality agreements with these customers, meaning they're free to disseminate the trade secrets that JCAM alleges them to be to anyone they want, including to go across the street to a competitor and say, hey, you're selling this for $10. I want it for $9.50. That's a pretty commercially reasonable and common-sense thing to do, and it was their right to do it. With respect to the third, Slauson, while there was a vague and general master services agreement that was entered over eight years before the disclosure, and as Judge Hovland mentioned, it's vague and generic as far as the confidentiality clause, and summary judgment, of course, requires more than just a scintilla evidence, the more fatal problem is that the information didn't go directly to Slauson. It went through another third party, Burning Feathers Oil Field, and there's no evidence in the record that there's any contractual provision or confidentiality agreement with that entity, and so, therefore, we're in the same boat. JCAM freely disseminated its alleged trade secrets, and that is a failure of reasonableness on summary judgment. Roberts, Jr. Counsel, they did make their employees sign nondisclosure agreements, so why doesn't that create a question of fact as to whether they took reasonable efforts? Whatever the employee obligations are speak to nothing about the ability of what third parties can do. And so if this was a situation where we're only talking about Coca-Cola's trade secret that doesn't leave Coca-Cola, sure, it might be relevant that you have employees sign confidentiality agreements, but when you choose to freely disseminate it outside of your building to third parties, it doesn't matter that you have your own house being confidential if the people outside of your company are free to disseminate it. What about Slauson? In Slauson, actually, there's a contractual obligation not to release it. Well, as I mentioned, Burning Field Oil Feathers is a third party, that intermediary that received it before Slauson ever gets that proposal. So Burning Field Oil Feathers LLC is free to disseminate it. There's no confidentiality restrictions on it, and that is a waiver by itself. So with that, I see I'm running out of time. I'm going to cede the remainder of my argument to my co-counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Sean Walsh, and I represent the appellee in Cross Appellant Geochemicals. I have a brief amount of time with you here today, but I want to touch on a couple of issues, some of which Ms. Norenz has already covered and some are new. First, I want to go back to the trade secret analysis. Judge Hovland properly found that there was no misappropriation of trades here claimed against my client, Geochemicals, and that's from the plain language of the complaint. I don't believe that JCCAM 2013 understood that until we were standing here today, and I heard no reply, or I saw nothing in the reply, and I heard no argument from them that that claim exists against Geochemicals, but that's very clear in the record. As it relates to Mr. Shepard and that claim, one quick point on the price in the competition that I believe the panel is picking up on. There's record evidence that exactly what you described likely happens, does happen, and JCCAM Chemical got Geochem's price on Slauson to take it back, to keep that business, and that evidence is in the record that that's the way the competition industry works. Now... Is there a genuine issue of material fact on that? I mean, you have evidence. The other side has evidence. I wonder if there's enough to get past summary judgment on that issue. I would agree with my part, my co-counsel, Mr. Orens, when he described the evidence, so to speak, on the efforts is really irrelevant when you take the final effort of there is no protection when it goes out the door, and I believe that's what Judge Hovland was ultimately finding when he issued his order, which we believe was correct, I mean, that step is done. Intentional, voluntary public dissemination of that information without any obligation to keep it confidential. The only claim actually on appeal against Geochemicals, I believe, as the briefing was unclear until we got to this point, was the tortious interference with employees' contracts. For all the reasons Mr. Orens discussed on the contract, existence or lack thereof, that claim fails against Geochemicals as well. If there were to be a contract found by this panel, the claim would still fail as to Geochemicals. Geochemicals can hire JCCAM 2013 employees. Geochemicals can solicit JCCAM 2013 employees. Geochemicals can go after every JCCAM 2013 employee it wants. And that is exactly how these companies have competed over the last five years with one of 11 lawsuits pending. Briefly to our cross-appeal. And I recognize that this Court has probably asked and wants to know why would our tortious interference claim be the one that Judge Hovland erred on when he dismissed that counterclaim, but the others were appropriate. And I'd like to try and touch on that real quick. And it's a couple pieces of very specific evidence. And it's in appendix page 3086 and 3088 and 3078. And you'll find that in the appendix. JCCAM met with Continental, a customer of Geochemicals, and circulated an internal memo boasting about the fact that they showed Continental Art Shepard's agreement. Before that happened, Geochem had the business, and that's in the appendix slide I gave you. They were continuing to work with Continental. That happens. It says, Art lied to me, referenced Mr. Shepard being a liar. I think it's two days or three days later. Again, it's in the record. Continental pulls the business. The district court dismissed that claim on the finding of no independent tortious conduct and no actual damages. The damages is undisputed. There's damages. It's gone. The business is lost. And if I may very briefly address the independent tortious conduct. If you continue much longer, I'll give extra time to the appellant. Okay. With that, Your Honor, I. Now, please start the clock for extra time for the appellant. That's quite all right, Your Honor. We will rest on what we've communicated here today in the briefs. And I appreciate the Court's time. Thank you very much. It's still one minute. Thank you, Your Honors. A few brief points in rebuttal. First, as to the breach of contract claim, Mr. Ahrens has completely ignored that old JCCAM expressly conveyed Mr. Shepard's employee agreement as an asset it had authority to convey on March 1, 2013, in the asset purchase agreement. As to consideration, North Dakota law says that a written instrument is presumed to be supported by consideration. And as Your Honor pointed out, the opportunity to participate was the state of consideration. As to the trade secret claim, I want to be clear to this Court, they have proffered no evidence of actual disclosure. Nor is there any evidence, as Mr. Walsh said, of, quote, public dissemination. What there is is evidence that this was conveyed to the customers and to the third-party burning feathers that allows them to do business on tribal land. As to whether JCCAM got Geo's price, and I'm out of time, Your Honor. You can finish your sentence, counsel, for sure. Go ahead. I appreciate that, Your Honor. No, go ahead. So the fact that JCCAM got Geo's price is a direct result of the misappropriation that happened. It's not for any other reason. That's how JCCAM was able to retain the business. It's not for any other reason, and it's actually not relevant to whether JCCAM's price has been disseminated. Thank you. Thank you, Your Honors. Thank you all.